**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

ANTONIO E. ELIJAH,                          :

            Petitioner,          :
                                      Case No. 3:07CV0385

  vs.                                     :

KHELLEH KONTEH, WARDEN,        :     District Judge Thomas M. Rose
                             Magistrate Judge Sharon L. Ovington

            Respondent.         :

                          :

---

## REPORT AND RECOMMENDATIONS[1]

---

## I.     INTRODUCTION

      This matter is before the Court upon Petitioner, Antonio E. Elijah's Petition for Writ of Habeas Corpus (Doc. # 2), Respondent's Return of Writ (Doc. # 8), Petitioner's Traverse (Doc. #12), and the record as a whole.

## II.     FACTUAL BACKGROUND

      The Montgomery County Court of Appeals, Second Appellate District of Ohio, set forth the facts  of this  case on direct appeal as follows:

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Elijah was indicted separately for the rapes of three different victims, and the indictments were referred to as Indictments A, B, and C. Indictment B was severed, and the offenses charged in Indictments A and C proceeded to trial together on March 28 through April 1, 2005.

Under Indictment A, Elijah was charged with the rape of A.C., aggravated robbery, and two firearm specifications. A.C. testified that, on June 21, 2001, she and a female friend had been leaving Banana Joe's in downtown Dayton when they encountered "Eric," who was very friendly and asked them for a ride to Milano's Pizza on North Main. At trial, the women identified "Eric" as Elijah. They agreed to give him a ride and, while Elijah was in the car, he asked to use A.C.'s cellular phone. When they arrived at Milano's, Elijah was still using the phone, exited the car with it, and walked into the restaurant. He did not return, and when A.C. entered the restaurant, Elijah was no longer there. A short time later, A.C. and her friend saw Elijah walking down Main Street toward Milano's. A.C. got out of the car and yelled to Elijah that she wanted her phone back, whereupon he crossed to the far side of the street. A.C. followed, and as she caught up to him, he grabbed her arm and led her into the neighborhood through alleys and backyards while talking with her. Elijah began to warn A.C. of the danger of the neighborhood and told her not to run or scream because bad things would happen to her. He told her that he had a gun and made her feel it in his back pocket. When they eventually reached a park, Elijah asked A.C. to touch his penis, but she refused. He then raped her. Elijah took A.C.'s rings and a small amount of money. They put their pants back on and again began to walk through the neighborhood. When they encountered another person, Elijah acted as if A.C. was his girlfriend. She eventually ran away from him, although she had no idea where she was. She spotted Grandview Hospital and ran there, where she was subsequently examined and a rape kit was completed. The DNA from A.C.'s rape kit was later linked to Elijah.

Under Indictment C, Elijah was charged with the rape of C.S., kidnapping, aggravated robbery, and three firearm specifications. According to C.S., a homeless woman with Crohn's Disease and other health problems, on September 5, 2002, she was walking with her boyfriend to a homeless shelter where she hoped to spend the night. They were approached by "JJ," whom C.S. later identified as Elijah. Elijah was very friendly and, when he learned of C.S.'s situation, he said that he knew of an apartment where she could stay for $75 a week. Elijah, C.S., and her boyfriend walked around the neighborhood near Grandview Hospital for several hours. C.S. did not know where she was. Elijah then informed them that he needed to take care of something, that C.S. could come with him but the boyfriend could not, and that

2

they would be back in five minutes. Elijah became very mean after he and C.S. left the boyfriend, told C.S. that he had a gun, and alluded to his involvement with a gang that would kill her boyfriend if she did not do what he wanted. They continued walking and ended up in someone's backyard, where Elijah raped C.S. on a picnic table. He threatened that there were people in the house with guns on her that would shoot her or her boyfriend if she screamed. He also put a razor to her neck. After the rape, they wandered around the neighborhood a bit longer. Eventually, C.S. spotted some security guards and ran to them. Initially, Elijah approached the guards as well, claiming that C.S. was his girlfriend and acting as if they were having a domestic dispute. He fled before the police arrived. C.S. was examined at Grandview Hospital, and a rape kit was completed. The DNA from C.S.'s rape kit was linked to Elijah.

Elijah testified at trial that the sex with both women had been consensual. He testified that he and A.C. had gone to the park to smoke crack cocaine because A.C. was trying to hide her drug use from her friend. He stated that A.C. had thought he looked like "Tupac," a rapper, and had initiated the sexual encounter. He denied having a gun or taking any property from her. With respect to C.S., he claimed that she had been willing to exchange sex for drugs and that they had consensual sex at a hotel.

The jury found Elijah guilty of the two counts of rape, each with a firearm specification, and acquitted him of the other charges. He was sentenced to two ten-year terms of imprisonment on the rapes, along with three year terms of actual incarceration on the firearm specifications.

*State v. Elijah*, 2006 Ohio 2635; 2006 Ohio App. LEXIS 2471.

## III.    STATE COURT PROCEEDINGS

On August 23, 2004, a Montgomery County Grand Jury indicted Elijah on one count of rape with a firearm specification and one count of aggravated robbery, with a firearm specification. (Doc. # 8, Exhibit 1, Case No. 2004CR02351-A). On January 20, 2005, a Montgomery County Grand Jury indicted Elijah on other charges consisting of one count of rape, with a firearm specification; one count of aggravated robbery, with a firearm specification; and one count of kidnapping with a firearm specification. (Doc. # 8, Exhibit

3

3, Case No. 2004CR0235-B). On March 1, 2005, a Montgomery County Grand Jury again indicted Elijah, on additional charges of one count of rape, with a firearm specification; one count of kidnapping, with a firearm specification; and one count of aggravated robbery, with a firearm specification. (Doc. # 8, Exhibit 5, Case No. 2004CR0235-C). A jury trial commenced on the counts contained in the "A" and "C" cases. The "B" case was rescheduled for a trial at a later date. On April 1, 2005, Elijah was found guilty of two counts of rape with firearm specifications. (Doc. # 8, Exhibit 12).

On April 25, 2005, Elijah, through new counsel, filed a motion for disqualification of the trial judge in respect to the then-pending trial of the "B" case. (Doc. # 8, Exhibit 13) On May 6, 2005, Elijah, pro se, filed an affidavit of disqualification with the Ohio Supreme Court. (Doc. # 8, Exhibit 16). The Ohio Supreme Court denied the affidavit on May 10, 2005. (Doc. # 8, Exhibit 15).

On May 13, 2005, Elijah was ordered to serve a sentence of ten years on the charge of rape in indictment "A", with an additional three years incarceration for the firearm specification, and a consecutive ten year term for the charge of rape in indictment "C", with an additional three years incarceration for the firearm specification. All sentences to be served consecutively, for an aggregate total of 26 years. (Doc. # 8, Exhibit 16). On September 29, 2005, the Court granted the request of the State and entered a nolle prosequi without prejudice for the charges in indictment "B". (Doc. # 8, Exhibit 17).

**DIRECT APPEAL**

4

Through appellate counsel, who was not the same counsel as at trial, Elijah timely appealed to the Second District Court of Appeals, Montgomery County, Ohio. Elijah set forth six assignments of error in the state Court of Appeals as follows:

1.  The trial court erred and abused its discretion in failing to sever the A and C portions of the indictment for trial, thereby depriving Appellant of a fair trial.

2.  The trial court erred and abused its discretion in failing to appoint new counsel for Appellant and continuing his trial thereby depriving Appellant of effective assistance of counsel and a fair trial.

3.  The trial court erred in failing to give a limiting instruction to the jury to disregard if they had seen Appellant in handcuffs.

4.  Appellant was denied his right to compulsory process to compel the attendance of witnesses by his counsel and the court.

5.  Appellant was denied effective assistance of counsel.

6.  The Appellant was deprived of his constitutional right to a fair trial by the bias and prejudice of the trial court.

(Doc. # 8, Exhibit 18 Elijah's Brief, Case No. 21085). On May 19, 2006, the Court of Appeals affirmed the judgment of the trial court. (Doc. # 8, Exhibit 21).

Elijah, *pro se*, filed a timely appeal to the Ohio Supreme Court. In his memorandum in support of jurisdiction, Elijah asserted the following seven propositions of law:

I.   Where a complete breakdown in attorney-client communication is demonstrated, the refusal to substitute  appointed counsel for trial deprives the defendant of his Sixth and Fourteenth Amendment Right to effective counsel.

II.  The denial of a defendant's right to compulsory process based upon pretextual reasons asserted by court and counsel violates the Sixth Amendment as well as Due Process of law.

5

III. Where defense counsel has admitted to a complete breakdown in attorney-client communication, and completely fails to prepare or investigate for trial, and fails to make the adversarial testing process work at trial, the Sixth and Fourteenth Amendments, and the Ohio Constitution, are violated.

IV. Where the record in a criminal case is replete with the apparent bias of the trial judge, the defendant has been denied a fair trial and Due Process of law.

V. Where appointed appellate counsel neglects significant and obvious issues of constitutional magnitude with a reasonable probability of success on appeal, the appellant has been deprived of effective counsel on appeal.

VI. A prison term that is enhanced beyond the statutory maximum based upon judicial fact finding is unconstitutional under the Sixth Amendment.

VII. Where a trial court responds ex parte to a question from the jury regarding a critical piece of defense evidence by erroneously stating that the evidence was not introduced and fails to notify counsel, the right to a fair trial by an impartial tribunal and to Due Process of law his been abrogated.

(Doc. # 8, Exhibit 22). On October 4, 2006, the Ohio Supreme Court denied leave and dismissed the appeal because it did not involve any substantial constitutional question. (Doc. # 8, Exhibit 23).

## IV.  FEDERAL HABEAS CORPUS

Elijah, *pro se*, filed the instant petition for a writ of habeas corpus asserting the following grounds for relief:

> **GROUND ONE**: There was a complete breakdown in Attorney – Client communication (sic) is demonstrated. The refusal to substitute appointed counsel for trial deprives the defendant of sixth and

fourteenth amendment right to effective counsel.

**GROUND TWO**: The denial of a Defendant's right to compulsory process based upon pretextual reasons asserted by the court, and counsel violates the sixth amendment as well as due process of law.

**GROUND THREE**: Where Defense Counsel has admitted to a complete breakdown in Attorney-Client communication and completely fails to prepare or investigate for trial, and fails to make adversarial testing process work at trial the sixth (sic)fourteenth amendments violated.

**GROUND FOUR**: Where the record in a criminal case is replete with the apparent bias of the trial judge, the Defendant has been denied a fair trial and due process of law.

**GROUND FIVE**: Where appointed Appellant Counsel neglects significant and obvious issues of constitutional magnitude with a reasonable probability of success on appeal, the Appellant has been deprived of effective counsel on appeal.

**GROUND SIX**: A prison term that is enhanced beyond the statutory maximum based upon judicial fact finding is unconstitutional under the sixth amendment.

**GROUND SEVEN**: Where a trial court responds ex parte to a question from the jury regarding a critical piece of defense evidence by erroneously stating that the evidence was not introduced and fails to notify counsel, the right to fair trial by impartial tribunal and due process of law has been abrogated.

## V.     **APPLICABLE LAW**

### A.     **The Antiterrorism and Effective Death Penalty Act ["AEDPA"]**[2]

A federal court may consider a state prisoner's petition for a writ of habeas corpus

---

[2]Codified in large part at 28 U.S.C. § 2254.  *See* Pub.L. No. 104-132, 110 Stat. 1214.

only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the AEDPA, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on an unreasonable determination of the facts in light of the evidence present in the state court proceedings. 28 U.S.C. § 2254(d)(1); *see also Williams v. Taylor*, 529 U.S. 362, 402-03 (2000) (O'Connor, J.). The phrases "contrary to" and "unreasonable application" have independent meaning.

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court] has done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of a particular case. The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one. *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citations omitted); *see also Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006), *cert. denied*, 549 U.S. 1255 (2007).

"A decision is an 'unreasonable application' of clearly established Supreme Court law if a 'state court correctly identifies the governing legal principle from [the Supreme Court's]

8

decisions but unreasonably applies that principle to the facts of [a] prisoner's case.'" *Gray v. Moore*, 520 F.3d 616, 621 (6th Cir.) (quoting in part *Williams*, 529 U.S. at 413) (brackets in original), *cert. denied*, ___ U.S. ___, 129 S. Ct. 216 (2008). "An unreasonable application of federal law is one that is 'objectively unreasonable' and not merely incorrect." *Sinkfield v. Brigano*, 487 F.3d 1013, 1016 (6th Cir.) (citation omitted), *cert. denied*, 552 U.S. 961 (2007). Thus, "[a] federal habeas court may not find a state adjudication to be 'unreasonable' 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001). Where a state court has not articulated its reasons for rejecting a convicted criminal's grounds for appeal, a federal court considering that individual's subsequent habeas petition should "focus on the result of the state court's decision" to determine whether that decision is contrary to or unreasonably applies clearly established United States Supreme Court precedent, or is based on an unreasonable determination of the facts in light of the evidence presented. *Stovall*, 212 F.3d at 943 n.1. Such independent review, while "not a full, de novo review of the claims," nonetheless "remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.* at 943.

For purposes of habeas review, a state court's determinations of factual issues are presumed correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). That deference extends to the state court's credibility assessments, *see Seymour v. Walker*, 224 F.3d 542, 553 (6th Cir. 2000), *cert.*

9

*denied*, 532 U.S. 989 (2001), and to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). "Indeed, the presumption applies with particular force to credibility determinations, as the Supreme Court has ruled that such determinations receive 'special deference' from the federal courts." *Id.* (citing *Patton v. Yount*, 467 U.S. 1025, 1038 (1984)). The same presumption applies to state appellate courts' findings of fact made on review of the state trial record. *Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003).

## B.    Procedural Default

Before a federal court will consider a state prisoner's claims on habeas corpus review, he ordinarily first must have exhausted the remedies available in the courts of the custodial state. 28 U.S.C. §§ 2254(b), (c); *see Franklin v. Rose*, 811 F.2d 322 (6th Cir. 1987). A state defendant with federal constitutional claims therefore must fairly present those claims to the state's highest court for consideration before raising them in a federal habeas corpus action. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To be considered to have been fairly presented to the state courts, a federal habeas claim must be based on the same facts and the same legal theory raised before the state courts. *Franklin*, 811 F.2d at 325. Accordingly, a federal habeas petitioner must have presented his claim to the state courts as a federal constitutional issue and not simply as an issue arising under state law, in order to have preserved that claim. *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)); *see also Prather v. Rees*, 822 F.2d 1418, 1420-24

(6th Cir. 1987).

If a defendant fails to present the state court reviewing his conviction with his federal claims in accordance with that state's established procedural rules, and if the final state court addressing that defendant's claims holds that such procedural default precludes further consideration of such claims, the federal courts also may not consider the merits of those claims. *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977); *Engle v. Isaac*, 456 U.S. 107, 125-29 (1982). Such procedural bars may be imposed for failing to follow state procedural rules during pretrial, trial, or on appeal. *See id.* Where a procedural default prevents a habeas corpus petitioner from presenting one or more of his claims to the state courts, then, he usually may obtain federal review of such claims only by demonstrating cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 129.

The United States Supreme Court has recognized "a narrow exception to the cause requirement" only in those cases implicating "fundamental miscarriages of justice" – *i.e.*, "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense," and as to claims of capital sentencing error. *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (citing *Murray*, 477 U.S. at 496; *Sawyer v. Whitley*, 505 U.S. 333 (1992)).

When a state alleges that a federal habeas claim is precluded by procedural default, a four-part analysis is required. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). First, the district court must determine that the petitioner failed to comply with a state procedural

rule that is applicable to the petitioner's claim. *Id.* Second, the court must decide whether the state courts actually enforced the state procedural sanction. *Id.* Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state may rely to foreclose review of a federal constitutional claim. *Id.* Fourth, once the court has determined that a state procedural rule was not complied with and that such rule constitutes an adequate and independent state ground, the petitioner then must demonstrate "cause" for his failure to follow the procedural rule and actual prejudice stemming from the alleged constitutional error. *Id*.

### Ground One: Denial of Substitute Counsel

In his First Ground for Relief, Petitioner claims that there was a breakdown in the attorney-client relationship that deprived him of effective assistance of counsel and the trial court's refusal to substitute appointed counsel for trial deprived him of his right to effective counsel. Petitioner's substitution of counsel claim is without merit. It is well-settled that the right to counsel of one's choice is not absolute. *See Wheat v. United States*, 486 U.S. 153, 159, 108 S. Ct. 1692 (1988). An indigent defendant does not have an absolute right to choose appointed counsel. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 151, 126 S. Ct. 2557 (2006). A defendant who is dissatisfied with appointed counsel must show "good cause" to warrant the substitution of counsel. *See United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). Good cause includes "a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with [the] attorney." *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985). The decision regarding whether to appoint new counsel at a defendant's request is

12

committed to the sound discretion of the trial court. *See United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004).

The Sixth Circuit considers three factors when evaluating a trial court's denial of a request for substitute counsel: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the attorney and the defendant was so great that it resulted in a total lack of communication preventing an adequate defense. *See Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008) (citing *Iles)*. These factors are balanced with the public's interest in the prompt and efficient administration of justice. *See Iles*, 806 F.2d at 1131, n. 8; *see also United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

The state Court of Appeals in its response to Elijah's second assignment of error before that court stated the following:

Elijah contends that he should have been afforded new counsel because of a breakdown in communication and cooperation with his appointed counsel.

> At the hearing on his request for a new attorney, which was held the morning of trial, Elijah complained that his attorney had not considered the witnesses that he wanted to call and had wasted time pursuing the possibility of a plea bargain after he had made it clear that he was not interested in a plea. He claimed that his counsel was unprepared for these reasons.

> Counsel asserted that Elijah had previously suggested only two witnesses to her and that both of these witnesses had been on the state's witness list. She stated that her strategy had been to cross-examine these witnesses rather than to subpoena them herself. With respect to some of the witnesses mentioned to her for the first time at the hearing, such as his parole officers, the attorney stated that she did not consider those to be character witnesses and that she did not think they should put character forward in the defense. She also said that, in her legal opinion, character evidence would be appropriate only if Elijah was going to testify, and she stated that Elijah had expressed doubt about testifying. Counsel indicated that she did not feel prepared to proceed to trial in light of the

13

fact that Elijah had refused to communicate with her over the preceding weekend, but that she had prepared as best she could.

The trial court noted that this was the second time that Elijah had requested a different attorney, and it reminded him that, when the first attorney was replaced, the court had informed Elijah that only very compelling reasons would justify any further changes. The court then found that Elijah was requesting a new attorney for purposes of delay and that he had deliberately waited until the last minute to provide witness information to his attorney. The court also found Elijah's claim that he had presented his witness list to his attorney earlier, but she had refused to consider the list, to be untruthful.

The trial court correctly observed that it was within the court's discretion to determine whether a genuine problem existed  requiring the substitution of counsel. "[A] defendant may discharge a court-appointed attorney when the defendant can demonstrate a break-down in the attorney-client relationship to such a degree as to endanger the defendant's right to effective assistance of counsel. Specifically, an indigent defendant is entitled to the appointment of new counsel when there is a showing of good cause, such as a conflict of interest where the conflict is so severe that the denial of substitute counsel would violate the Sixth Amendment right to counsel. Alternatively, the defendant may demonstrate a complete breakdown of communication or an irreconcilable conflict which leads to an unjust result." (Citations omitted.) *State v. Adair*, Montgomery App. Nos. 20606, 20607, 20608, 2005 Ohio 2858, P4. The trial court acted within its discretion in concluding that Elijah's problems with his attorney were fabricated and did not justify replacing counsel on the day of trial.

*State v. Elijah*, 2006 Ohio 2635; 2006 Ohio App. LEXIS 2471.

Based upon the extensive record made by the trial court, the state Court of Appeals' adjudication was not an unreasonable determination of the facts in light of the hearing conducted on the morning of trial. The adjudication was not contrary to clearly established federal law as determined by the Supreme Court of the United States. This is not a case where there was a conflict in representation. The difficulties between trial defense counsel and Elijah, to the extent there was a refusal by Elijah to speak with his lawyer for some

14

period shortly before trial, did not rise to the level of a Sixth Amendment violation.

In this case, the trial court did not abuse its discretion nor violate Petitioner's constitutional

rights in denying his request for substitute counsel.  A request for substitute counsel on the

day of trial or a few days before trial is untimely. *See Trujillo*, 376 F.3d at 606-07; *United*

*States v. Wilhite*,108 F. App'x 367, 369 (6th Cir. 2004).

The instant case is similar to *James v. Lafler*, 2010 U.S. LEXIS 96829 (E.D. Mich.,

Sept. 16, 2010), wherein the Court noted:

> Regarding petitioner's assertion of a complete breakdown in communication
> between himself and counsel, it is true that counsel indicated on the day of trial that
> petitioner had refused to speak with him, suggesting a complete breakdown in
> communication...However, petitioner 'has cited no Supreme Court case–and we are
> not aware of any–that stands for the proposition that the Sixth Amendment is
> violated when a defendant is represented by a lawyer free of actual conflicts of
> interest, but with whom the defendant refuses to cooperate because of dislike or
> distrust.' *Plumlee v. Masto,* 512 F. 3d 1204, 1211 (9th Cir. 2008)(en banc); *see also,*
> *United States v. Vasquez,* 560 F. 3d 461, 467-68 (6th Cir. 2009). On the contrary,
> the courts have generally held that '[a] unilateral refusal by the defendant to
> communicate with counsel may justify denying a request to  substitute counsel, for
> example, where the defendant's refusal is frivolous or manipulative, or arises out of
> general unreasonableness or manufactured discontent.' *United States v. Valer-di-*
> *Melgarejo*, 11 Fed. App'x 796, 797.

*Id.*

Petitioner has failed to establish that the decision of the Ohio Court of Appeals in

denying his claim regarding his  request for substitute counsel constituted an unreasonable

application of clearly established Supreme Court law. Moreover, for purposes of habeas

review, a state court's determinations of factual issues are presumed correct, and the

petitioner has the burden of rebutting this presumption by clear and convincing evidence.

15

28 U.S.C. § 2254(e)(1).  That deference extends to the state court's credibility assessments, *see Seymour v. Walker*, 224 F.3d 542, 553 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001), and to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Herein the Ohio Courts  found that Petitioner was requesting a new attorney for purposes of delay and that he had deliberately waited until the last minute to provide witness information to his attorney. The Ohio Courts also found Petitioner's claim that he had presented his witness list to his attorney earlier, but she had refused to consider the list to be untruthful. Petitioner has fail to rebut these factual findings by clear and convincing evidence. Habeas relief is not warranted.

**Ground Two: Denial of the Right to Compulsory Process**.

Petitioner maintains that because of counsel's untimely issuance of subpoenas, he was prevented from compelling crucial defense testimony from the initial lead Prosecutor, and the lead Detective. Petitioner argues that it is clear that the testimony would have substantially and materially affected the verdict, as demonstrated by the fact that the jury issued a question requesting to view the police report generated by one of the missing witnesses.

The Supreme Court has repeatedly recognized that the right to present a complete defense in a criminal proceeding is one of the foundational principles of our adversarial truth-finding process: "Whether rooted directly in the Due Process Clause of the

16

Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the

Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful

opportunity to present a complete defense.' " *Holmes v. South Carolina,* 547 U.S. 319,

324, 126 S.Ct. 1727 (2006) (quoting *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct.

2142 (1986) (quoting *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528 (1984))

(internal quotation marks omitted). But a "meaningful opportunity" is not "every

opportunity," and relevant evidence is frequently excluded from trial.

A defendant's right to due process in a criminal trial is, "in essence, the right to a

fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410

U.S. 284, 294, 93 S. Ct. 1038 (1973). However, "[t]he accused does not have an

unfettered right to offer testimony that is incompetent, privileged, or otherwise

inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410, 108

S. Ct. 646 (1988). In other words, "[a] defendant's right to present relevant evidence is not

unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523

U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1988). The exclusion of evidence in a

criminal trial "abridge[s] an accused's right to present a defense" only where the exclusion

is "'arbitrary' or 'disproportionate to the purpose[ ] [it is] designed to serve.'" *Id*. (quoting

*Rock v. Arkansas*, 483 U.S. 44, 56, 107 S. Ct. 2704 (1987)). In applying the *Rock*

standard or some earlier formulation thereof, the Supreme Court has "found the exclusion

of evidence to be unconstitutionally arbitrary  or disproportionate only where it has

infringed upon a weighty interest of the accused." *Scheffer*, 523 U.S. at 308 (citing *Rock*,

17

483 U.S. at 58, *Chambers*, 410 U.S. at 302, and *Washingtonv. Texas*, 388 U.S. 14, 22-23, 87 S. Ct. 1920 (1967)).

A trial judge may insist on an explanation of a defendant's failure to identify witnesses prior to trial. *Taylor v. Illinois,* 484 U.S. 400, 415 (1988). The Sixth Amendment does not give a criminal defendant the right to compel the attendance of any and all witnesses; it guarantees him the right to obtain witnesses in his favor. *United States v. Valenzuela-Bernal,* 458 U.S. 858, 867 (1982). A defendant must at least make some plausible showing of how the testimony would have been both material and favorable to his defense. *Id.*

The state Court of Appeals in its answer to this assignment of error held:

Elijah claims that his right to compel witnesses to testify on his behalf was violated by the trial court's failure to permit him to call two witnesses, Jim Connell and Detective William Lawson.

As background to the dispute over these witnesses, we reiterate that Elijah had requested new counsel on the eve of trial, in part because of his counsel's alleged failure to subpoena the witnesses that he wanted. The trial court found that Elijah had deliberately waited until the last minute to provide witness information to his attorney as a delay tactic. The court did, however, instruct defense counsel to attempt to subpoena Elijah's witnesses while the state was presenting its case in chief, noting that the testimony of these witnesses would still have to comply with the evidentiary rules. As such, we note that the trial was under way when Elijah's witnesses were subpoenaed, for reasons that the trial court attributed to Elijah's own actions.

Jim Connell was a Montgomery County prosecutor who, at some point in the past, had allegedly refused to approve charges against Elijah related to the rape of A.C. Elijah indicates that Connell "may have had knowledge not contained in the police reports that indicated defects in the prosecution's case." At the outset, the trial court expressed strong skepticism about the

18

relevance of this testimony. But the court seems to have indicated that a subpoena could be issued, with the understanding that it might be quashed if Elijah was unable to establish relevance. The record does not establish that a subpoena was ever issued for Connell.

The state suggests that any error in failing to subpoena Connell was harmless in light of the trial court's skepticism about the relevance of Connell's testimony. We agree. It is not clear what evidence was before Connell when he made his decision not to bring charges against Elijah, although it is apparent that DNA evidence had not yet been obtained. Connell's assessment of whether a particular body of evidence at a different point in time was sufficient to bring charges against Elijah had no bearing on the issues before the jury.

Elijah also sought to have Detective William Lawson testify on his behalf. Lawson investigated A.C.'s rape. An initial attempt to subpoena Lawson was unsuccessful because he had retired from the police department, and then he was out of town during part of the trial. The trial court refused to continue the trial so that Lawson could attend. Elijah claimed that Lawson's testimony would have been relevant "to understand the nature of the investigation he conducted" and to show an inconsistency in A.C.'s testimony about whether she had been "pushed" or "guided" to the ground prior to the rape. The trial court found that the alleged inconsistency was minor, that the difficulty in obtaining the evidence was driven by the defendant's delay tactics, and that the attorney would not have chosen to subpoena Lawson but for Elijah's insistence. Again, we find no fault with the trial court's decision. The value of the testimony was minimal, and Elijah was responsible, at least in part, for the logistical problems with bringing Lawson to court. The fourth assignment of error is overruled.

*State v. Elijah*, 2006 Ohio 2635; 2006 Ohio App. LEXIS 2471.

The record reveals that neither of Petitioner's proposed witnesses had material favorable evidence to present. Any testimony offered by Mr. Connell could hardly be characterized as favorable to Petitioner in light of the DNA evidence which he did not have at the time he initially reviewed the case. Detective Lawson's testimony regarding the use of force used in one of the rapes would have been similarly

19

unfavorable. Additionally, evidentiary rulings made by the trial court are not cognizable on habeas review. The decision of the Ohio Court of Appeals did not result in an unreasonable application of federal law.

**Ground Three: Ineffective Assistance of Trial Counsel**

Petitioner asserts that "[w]here Defense Counsel has admitted to a complete breakdown in Attorney-Client communication and completely fails to prepare or investigate for trial, and fails to make adversarial testing process work at trial the sixth [and] fourteenth amendments [are] violated." (Doc. # 2).

To demonstrate that his counsel's performance was constitutionally ineffective, a petitioner must show that: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment, and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A court may dispose of an ineffective assistance of counsel claim by finding that the petitioner made an insufficient showing on either ground. *See id.* at 697.

Under the first prong of the *Strickland* test, a petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *See id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.*

20

at 689.  In determining whether or not counsel's performance was deficient, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  *See id.* In order to satisfy the "prejudice" prong of the *Strickland* test, a petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different.  *See id.* at 694.  A showing by the petitioner that the alleged errors had "some conceivable" effect on the outcome of the proceeding is insufficient to meet this standard.  *See id.* at 693.  By the same token, however, a petitioner need not demonstrate that his counsel's conduct "more likely than not" altered the outcome of the proceeding in order to establish prejudice.  *See id.*  A petitioner has met his burden if he shows that the decision reached would "reasonably likely have been different absent the errors."  *See id.* at 695.  The *Strickland* test also applies to challenges to counsel's effectiveness on appeal.  *Evitts v. Lucey*, 469 U.S. 387 (1985). In response to this claim, the Ohio Court of Appeals stated:

> Elijah claims that his attorney was ineffective because she continued to pursue the possibility of a plea bargain even after he had indicated his determination to go to trial. He asserts that she would have been more prepared for trial if she had spent this time focusing on the names of witnesses that he gave her. He also claims that she was ineffective in failing to question A.C. about an alleged inconsistency between her statement to the police and her trial testimony regarding whether she had been "pushed" to the ground.

> Trial counsel is entitled to a  strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland v. Washington* (1984), 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674. See, also, *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that counsel's errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would

have been different. *Strickland*, 466 U.S. at 688.

Elijah's alleged efforts to deter his attorney from pursuing a plea bargain are not contained in the record. As a general rule, however, the pursuit of plea negotiations does not constitute ineffective assistance, even if the defendant is not inclined to accept a plea. See *State v. McDermott*, Lucas App. No. L-03-1110, 2005 Ohio 2095, P51. Insofar as Elijah claims that his attorney's plea negotiations detracted from her ability to explore the value of the witnesses that he wanted to call, we note that the trial court found Elijah's testimony about his efforts to provide such names to his attorney lacking in credibility. Specifically, the trial court rejected Elijah's claim that he had attempted to provide counsel with the witness list earlier. Instead, the court concluded that he had used the witness list as an instrument of delay by springing it on his attorney at the last minute and then refusing to speak with her. In light of this finding, we reject Elijah's argument that counsel was ineffective for failing to pursue these witnesses prior to trial.

Elijah also claims that counsel was ineffective in failing to challenge A.C.'s assertion that Elijah had "pushed" her to the ground. He suggests that this characterization was stronger than the description contained in the police report. The state claims that this was a matter of trial strategy, with counsel opting to avoid the risk of highlighting the force used to accomplish the rape. We agree with the state's position. Elijah claimed that sex with A.C. was consensual, while she claimed that it was not. Counsel could have reasonably decided that focusing on the degree of force alleged by the victim was not in Elijah's best interests. Moreover, we are unpersuaded that making this point would have affected the outcome of the trial.

*State v. Elijah*, 2006 Ohio 2635; 2006 Ohio App. LEXIS 2471.

Petitioner's arguments regarding his counsel's performance ignore the factual findings made by the Ohio Courts which are presumed to be correct. Based on those unrebutted factual findings the Ohio Court of Appeals' decision cannot be said to be an unreasonable application of federal constitutional law. Moreover, this Court has reviewed the trial transcript and notes that counsel, notwithstanding her client's failure to cooperate, effectively cross-examined witnesses and otherwise performed as highly competent counsel. This claim

lacks merit.

**Ground Four**: **Judicial Bias**

In this Ground for Relief Petitioner claims that the record is replete with the apparent bias of the trial judge, thereby denying him a fair trial and due process of law.

"[T]he floor established by the Due Process Clause clearly requires a fair trial in a fair tribunal, before a judge with no *actual* bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (emphasis added) (citation and quotation marks omitted). Under this standard, "[o]nly in the most extreme of cases would disqualification on the basis of bias and prejudice be constitutionally required." *Williams v. Anderson*, 460 F.3d 789, 814 (6th Cir. 2006) (brackets omitted) (quoting *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821, 106 S. Ct. 1580 (1986)). The Ohio Court of Appeals ruled on this claim as follows:

> Elijah asserts that the trial court "harbored an animus against him" that deprived him of a fair trial. He cites the court's failure to admonish the prosecutor for an obscene reference to the defendant outside the presence of the jury, its refusal to allow the removal of his handcuffs during a hearing outside the presence of the jury, and its imposition of the maximum sentence for rape even though the victims were not tortured, maimed, or otherwise treated badly as compared to other rapes.

> At the end of the hearing at which Elijah's first attorney was replaced because Elijah had filed a grievance against him, the prosecutor referred to Elijah as a "fucking punk." This comment was made outside the presence of any jurors, and it appears from the record that the prosecutor may have initially believed that he was off the record. After defense counsel questioned whether they were still on the record, the prosecutor stated that he would nonetheless "stand by that comment." Although this comment was inappropriate, considering the circumstances, we find no evidence of bias in the trial court's failure to admonish the prosecutor. Similarly, we find no impropriety in the trial court's refusal to permit the removal of Elijah's handcuffs for a brief hearing at which the jury was not present.

In imposing the maximum sentence, the trial court gave substantial weight to the fact that Elijah picked victims who he knew to be vulnerable so that he "could easily isolate, overpower, and rape" them. The court also noted his "long, diverse history of engaging in a criminal lifestyle" and his use of a gun in the offenses. There is ample support for these factors in the record, and the trial court did not abuse its discretion in determining that they were entitled to significant weight. The trial court did not abuse its discretion in imposing the maximum sentence.

*State v. Elijah*, 2006 Ohio 2635; 2006 Ohio App. LEXIS 2471.

In the instant case, Petitioner has alleged that the trial judge exhibited actual bias by failing to admonish the prosecutor for improper statements made outside the presence of the jury and for making certain rulings in the State's favor and against the defense. The Supreme Court addressed this type of claim in *Liteky v. United States*, 510 U.S. 540, 114 S. Ct. 1147 (1994).[3] In *Liteky,* the Supreme Court noted that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," and instead, [a]lmost invariably are proper grounds for appeal, not recusal." *Liteky*, 510 U.S. at 555. In the absence of a showing of reliance upon an extrajudicial source, judicial rulings "can only in the rarest circumstances evidence the degree of favoritism or antagonism required" to implicate concerns about a judge's lack of impartiality. *Id*. In this case, as the Ohio Court of Appeals reasonably concluded, petitioner's allegations are insufficient to overcome the presumption that the trial judge properly discharged his official duties. Upon review of the record, the undersigned

---

[3] Although in *Liteky*, the Court's analysis was based on statutory standards for the recusal of federal judges, the Sixth Circuit has relied on the decision in assessing judicial-bias claims under the Due Process Clause. *See Lyell v. Renico*, 470 F.3d 1177, 1186 (6th Cir. 2006) (citing *Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002), *cert. denied*, 541 U.S. 963, 124 S. Ct. 1721, 158 L. Ed. 2d 406 (2004)).

finds that none of the trial court's comments or rulings cited by petitioner as examples of judicial bias reflect the degree of favoritism or antagonism, found "only in the rarest circumstances," that is required to implicate concerns about the judge's "fair judgment." *See Liteky*, 510 U.S. at 555.

As to Petitioner's claim that the trial judge was biased because he allowed the jurors to see him in handcuffs and failed to give a limiting instruction, the Ohio Court of Appeals found that the record is unclear as to whether any potential jurors actually saw him in handcuffs while he was being transported from the jail to the courthouse. *State v. Elijah*, 2006 Ohio 2635; 2006 Ohio App. LEXIS 2471, Paragraphs 25,26 and 27.

Because neither Petitioner's allegations nor the record reflect the degree of hostility or antagonism that is required to trigger any  possible due process concerns about the trial judge's "fair judgment" in this case, Petitioner is not entitled to habeas relief based on his claim of judicial bias. *Cf. Williams v. Anderson*, 460 F.3d 789, 814-15.

**Ground Five**: **Ineffective Assistance of Appellate Counsel**

Petitioner asserts that he was denied the effective assistance of counsel on appeal because his appellate counsel neglected significant and obvious issues of constitutional magnitude with a reasonable probability of success on appeal.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776(1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). "[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the

hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986).

Petitioner asserts that his appellate should have raised two additional issues for review: judicial fact-finding in his sentence and an alleged ex parte communication by the trial court in response to a question from the jury. (These two claims are set out in the Petition as grounds six and seven).

The Sixth Circuit has consistently held that during the relevant time, counsel's failure to raise a *Blakely* claim did not constitute ineffective assistance of appellate counsel. *See Baker v. Voorhies,* 2010 U.S. App. LEXIS 17553; 2010 FED App. 0535N (6th Cir. 2010). This is so because during the relevant time period, the Second District Court of Appeals had continuously rejected challenges to Ohio's felony sentencing scheme after *Blakely.* Thus, any claim challenging Petitioner's sentence would have been rejected at the time the brief was filed. Under such circumstances, a failure to raise such a claim was not constitutionally unreasonable.

While it is true that the Ohio Supreme Court issued the decision of *State v. Foster*, 109 Ohio St. 3d 1 (2006), while Petitioner's appeal was pending, this fact does not alter this conclusion. The Supreme Court held in *Blakely* that "under the Sixth Amendment it is 'within the jury's province to determine any fact (other than the existence of a prior conviction) that increases the maximum punishment authorized for a particular offense.'" *Arias v. Hudson*, 589 F.3d 315, 316 (6th Cir. 2009)(citations omitted). Petitioner received two maximum sentences for his rape convictions.  Neither sentence exceeded the maximum permitted under Ohio law.  Consequently, neither sentence violated Petitioner's

26

constitutional rights. "The Sixth Amendment gives a criminal defendant the right to have a jury find any fact that increases the *maximum* sentence the defendant faces, not any fact that increases the *minimum* sentence." " *Arias*, 589 F.3d at 316 (emphasis in original).

The state sentencing judge's decision to impose two consecutive sentences did not violate Petitioner's constitutional rights. *See Oregon v. Ice*, __ U.S.__, 129 S.Ct. 711, 714-15 (2009).Therefore, when imposing a consecutive sentence, neither judicial fact-finding nor the lack of such findings, violate clearly established federal law. As such, any argument that *Blakely* precluded the imposition of consecutive sentences where judicial findings of fact were made is unavailing.

Petitioner next claims that his appellate counsel should have raised an issue regarding the trial court's answer to the jury question regarding their request to see police reports and witness statements. The trial court advised the jury that if the documents were not introduced as exhibits at trial, the jury was not able to see them. (Tr. 673-75). These documents were never introduced into evidence. There was no objection by counsel regarding the trial court's actions. This claim had no possibility of success on appeal. Therefore, counsel was not ineffective for failing to raise it.

**Ground Six**: **Sentencing Issues**

Petitioner claims that a prison term that is enhanced beyond the statutory maximum based upon judicial fact finding is unconstitutional under the Sixth Amendment. As a threshold matter, Petitioner was sentenced to the maximum sentence, not in excess of the

statutory maximum. Nevertheless, this claim has been procedurally defaulted because it was not raised in the Ohio Court of Appeals.

**Ground Seven**: **Trial Court's Response to a Jury Question**

In his final ground for relief Petitioner claims that where a trial court responds ex parte to a question from the jury regarding a critical piece of defense evidence by erroneously stating that the evidence was not introduced and fails to notify counsel, the right to fair trial by impartial tribunal and due process of law has been abrogated. Petitioner's claims are belied by the record. The trial Court did notify counsel of the question and answer and the documents were not admitted into evidence. In any event, this claim is also procedurally defaulted because it was not raised in the Ohio Court of Appeals.

Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied leave to appeal *in forma pauperis* and any requested certificate of appealability.

**IT IS THEREFORE RECOMMENDED THAT:**

1.    Antonio Elijah's  Petition for Writ of Habeas Corpus (Doc. #2) be DENIED and DISMISSED;

2.    Petitioner should be denied leave to appeal *in forma pauperis* and any requested certificate of appealability; and,

3.    The case be terminated on the docket of this Court.

January 26, 2011

                                        s/ Sharon L. Ovington
                                    Sharon L. Ovington
                              United States Magistrate Judge

28

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).